## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Crim. No. JKB-15-0462 |
| RAYMOND AIGBEKAEN, | * | |
| Defendant. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### MEMORANDUM AND ORDER

In September 2016, Raymond Aigbekaen was convicted at trial of several federal sex trafficking offenses. The following February, the Court sentenced him to 15 years of imprisonment. (ECF Nos. 189, 228.) Pending before the Court is Aigbekaen's "Motion for a Reduced Sentence Pursuant to 18 U.S.C. § 3582(C)(1)(A)(i)" (the "Motion for Compassionate Release") (ECF No. 644), filed by Aigbekaen's appointed counsel.[1] The Motion for Compassionate Release is fully briefed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the following reasons, the Motion for Compassionate Release will be granted in part, and Aigbekaen's sentence will be reduced by six months.

---

[1] Prior to the appointment of counsel, Aigbekaen had filed various *pro se* motions. (ECF Nos. 610, 613, 617, 631.) These motions will be denied as moot, in light of the instant Motion for Compassionate Release and Aigbekaen's counsel's decision not to otherwise supplement those motions. (*See* ECF No. 639 (Order dated May 29, 2024, directing Aigbekaen's counsel to supplement *pro se* filings).)

The Government has also filed a Motion to Seal (ECF No. 647), which requests that the Court seal the Government's Response in opposition to the Motion for Compassionate Release (ECF No. 648). The Motion to Seal will be denied without prejudice, as it improperly seeks to seal the entirety of the Response, even though much of that document contains legal argument that should be publicly viewable. The Court will maintain the Response under seal, but will direct the Government to file a renewed Motion to Seal, together with an unsealed version of the Response, with narrowly tailored redactions applied as necessary. In addition, the Court will order the unsealing of the Motion to Seal, which was itself filed under seal. The Court again reminds the Government that it is rarely appropriate for motions to seal to themselves be filed under seal. *See United States v. Russell*, Crim. No. JKB-23-0056, 2025 WL 50381, at \*1 (D. Md. Jan. 8, 2025); *United States v. Bendann*, Crim. No. JKB-23-0278, 2025 WL 50433, at \*1 (D. Md. Jan. 8, 2025).

## I.    Factual and Procedural Background

The Court will provide only a brief synopsis of the history of this case, which has been "litigated essentially continuously" since the time of Aigbekaen's conviction and sentencing. (ECF No. 623 at 7.)

In August 2015, a federal grand jury returned an indictment charging Aigbekaen and a co-defendant, Marcell Greene, with six counts relating to sex trafficking of a minor victim, "L."[2] (ECF No. 1.) Greene pleaded guilty before trial (*see* ECF No. 94) and, in September 2017, was sentenced to ten years of imprisonment (ECF No. 232).[3] Aigbekaen's case proceeded to trial, at the conclusion of which the jury found him guilty of all six counts. (ECF No. 189.) The jury did not, however, find him guilty of using "force, fraud, or coercion" with respect to Count 3 (sex trafficking), which would have carried an enhanced penalty. (*Id.*; ECF No. 564 at 2.) The Court sentenced him to 15 years of imprisonment. (ECF No. 228.) On direct appeal, the United States Court of Appeals for the Fourth Circuit affirmed. *United States v. Aigbekaen*, 943 F.3d 713 (4th Cir. 2019).

In the eight years since his sentencing, Aigbekaen has filed over one hundred motions or other correspondences *pro se* with the Court, attacking his conviction and the terms of his incarceration under nearly every conceivable legal theory. (*See, e.g.*, ECF No. 264.) The Court, across over seventy different orders, has denied all substantive relief sought. (*See, e.g.*, ECF No. 623.) Aigbekaen has also filed several appeals (*see, e.g.*, ECF No. 271), none of which have been successful. According to the Bureau of Prisons ("BOP")'s Inmate Locator, Aigbekaen is currently

---

[2] L. is referred to as "Victim 1" in the Indictment, but has generally been referred to as "L." throughout trial, on appeal, and in postconviction proceedings. (*See* ECF No. 564 at 2 n.3.)

[3] Greene has since been released from BOP custody as of October 18, 2024, according to the BOP's Inmate Locator.

incarcerated at FCI Englewood in Colorado, and is scheduled for release in September 2028.

In May 2024, the Court appointed counsel to represent Aigbekaen pursuant to the Criminal Justice Act, and directed counsel to supplement any then-pending *pro se* motions. (ECF Nos. 638, 639.) Counsel filed the instant Motion for Compassionate Release (ECF No. 644), which is now fully briefed.[4]

## II.    Legal Standard

The compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i) is one of a few exceptions to the general rule that a sentencing court cannot modify a term of imprisonment once it has been imposed. *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022). Under that statute, the Court may reduce a sentence if it finds that (1) there are "extraordinary and compelling reasons" for release; (2) a reduction is consistent with the applicable United States Sentencing Commission Policy Statement; and (3) the factors set forth at 18 U.S.C. § 3553(a) support such a reduction. Under the 2018 First Step Act, petitioners may file motions for compassionate release themselves, after complying with a basic administrative exhaustion requirement. *United States v. McCoy*, 981 F.3d 271, 276, 283 (4th Cir. 2020).[5]

Until 2023, there was no "applicable" Policy Statement, because the Sentencing

---

[4] Because Aigbekaen is now represented, the Court does not consider the substance of his earlier-filed pending *pro se* motions. However, the Court pauses to acknowledge the Government's assertion that Aigbekaen attached a "doctored" version of a document related to updated Sentencing Commission guidelines to one of his filings. (ECF No. 648 at 16 (citing ECF No. 610-2 at 1).) The Court agrees with the Government that the document Aigbekaen attached is plainly incorrect insofar as it appears to suggest that the base offense level for an offense under U.S.S.G. § 2G1.3(a) is always 24. But on the record before it, the Court has no way of knowing whether Aigbekaen himself intentionally "doctored" the document, whether another inmate altered the document without Aigbekaen's knowledge, whether the drafter of the document made a mistake, or whether the document was simply incomplete. Accordingly, the Court does not draw any negative inferences against Aigbekaen on the basis of his filing of this document.

[5] The Government concedes that Aigbekaen adequately exhausted his administrative remedies before filing the instant Motion (*see* ECF No. 648 at 7 n.3), and the Court therefore finds that the statute's exhaustion requirement has been met. *See* 18 U.S.C. § 3582(c)(1)(A).

Commission did not contemplate the possibility of prisoners moving for release themselves (as opposed to the BOP moving for release on their behalf), and district courts were accordingly free to consider "*any* extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citation omitted). But, as of November 1, 2023, the relevant Policy Statement now *does* provide for a defendant to move for a sentence reduction, *see* U.S.S.G. § 1B1.13(a), and is thus "applicable" for purposes of the compassionate release statute, *see United States v. Davis*, 99 F.4th 647, 658 (4th Cir. 2024); *United States v. Spriggs*, Crim. No. ELH-09-0361, 2024 WL 5186703, at *8 (D. Md. Dec. 20, 2024) ("[T]he Policy Statement is applicable to defendant-filed motions under § 3582(c)(1)(A)").

The Policy Statement provides for six categories of circumstances that, considered together or alone, constitute extraordinary and compelling reasons. The first four involve the defendant's medical circumstances, advanced age, family circumstances, and whether the defendant is a victim of abuse, respectively. U.S.S.G. § 1B1.13(b)(1)–(4). The fifth category provides that extraordinary and compelling reasons exist when any circumstance or combination of circumstances, considered by themselves or together with the other enumerated reasons, "are similar in gravity to those described in paragraphs (1) through (4)." *Id.* §1B1.13(b)(5). This "catchall" provision "maintains the broad discretion conferred on district courts to consider a wide array of extraordinary and compelling justifications for release." *United States v. Brown*, 706 F. Supp. 3d 516, 519 (D. Md. 2023) (*Brown II*).[6]

**III.    Analysis**

### *A. Extraordinary and Compelling Reasons*

The Court finds that, in the particular circumstances of this case, Aigbekaen's serious

---

[6] The sixth category, not relevant here, covers certain defendants serving unusually long sentences that are much longer than sentences that would likely be imposed today.

mental and physical health conditions collectively constitute "extraordinary and compelling reasons" for the purposes of 18 U.S.C. § 3582(c)(1)(A)(i).

As relevant here, extraordinary and compelling reasons exist when a defendant "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(1)(C). The Court finds that Aigbekaen's health conditions likely qualify as "extraordinary and compelling" under § 1B1.13(b)(1)(C), and that even if his circumstances do not fit precisely within the contours of that provision, his situation is nevertheless extraordinary and compelling because it is "similar in gravity" under § 1B1.13(b)(5).

It is undisputed that Aigbekaen suffers from a variety of physical and mental ailments. These include post-traumatic stress disorder ("PTSD"), a traumatic brain injury sustained during his Navy service, prediabetic metabolic state, primary hypertension, and obstructive sleep apnea. (*See* ECF No. 644 at 7–14; ECF No. 648 at 10–14.) While any one of these issues in isolation might not be considered extraordinary and compelling, the Court finds that the totality of these conditions, coupled with inadequate or inconsistent treatment by the BOP, combine to present an extraordinary and compelling reason for release.[7]

---

[7] There is evidence suggesting that Aigbekaen may suffer from other mental health conditions, including anxiety, depression, and episodes of mutism and/or derealization, but BOP medical professionals indicated that these symptoms were likely explained by malingering. (ECF No. 648 at 12; ECF No. 648-3 at 3; ECF No. 648-12.) Dr. Davidoff, a psychiatrist whom Aigbekaen's counsel has retained, disagrees with the diagnosis of malingering. (ECF No. 644-2 at 3–4.) The Court makes no findings as to whether Aigbekaen is malingering with respect to these symptoms, and accordingly assigns them no weight—positive or negative—in its assessment of the presence of extraordinary and compelling reasons. That said, the Court observes that even if Aigbekaen is malingering to some extent, it is undisputed that he *does* suffer from various other serious health conditions.

The Court also notes that Aigbekaen alleges that, in May 2022, he was sexually assaulted by other inmates. (ECF No. 644 at 14.) This allegation is troubling and would, if proven, be relevant to the extraordinary-and-compelling analysis. However, because the allegation is not substantiated, the Court assigns it no weight.

While Aigbekaen has received care while in BOP custody for his conditions, it is not clear if the care he has received has been sufficient to fully maintain or improve his health.[8] A March 2024 BOP report indicated that, although Aigbekaen "reports trauma related symptoms and has been given a mental health diagnosis, he is considered currently stable and seems to be utilizing generally constructive coping skills at this time." (ECF No. 648-3 at 4.) However, Aigbekaen has retained the services of a psychiatrist, Dr. Stephanie Davidoff, who reviewed his medical records and the Government's Response in opposition to the Motion for Compassionate Release. (ECF No. 644-2; ECF No. 653-1.) Dr. Davidoff concludes that the BOP's mental health treatment "has been of insufficient frequency, consistency, and duration to adequately address his active serious psychiatric illnesses," and that "[c]ontinuation of such insufficient treatment may permanently reduce his level of function." (ECF No. 653-1 at 2.) Dr. Davidoff also notes that the standard of care for "individuals who have a history of head injury and non-responsive spells" is to have a consultation with a neurologist in conjunction with MRIs and an EEG, but that BOP has not taken any of these steps, despite a recommendation in October 2022 by a BOP physician to do so. (*Id.* at 3.) Dr. Davidoff states that "[t]he notion that neurologic consultation and testing are unnecessary because of an assumption that Mr. Aigbekaen's spells arise simply from malingering and/or his PTSD-related symptoms . . . is NOT justified and this approach does not meet the medical standard of care." (*Id.*)

As for Aigbekaen's physical conditions (prediabetes, primary hypertension, and obstructive sleep apnea), the record indicates that Aigbekaen has been receiving some treatment, but his access to a CPAP machine has been inconsistent, and his rapid weight gain, high blood pressure, and prediabetic state are a cause for some concern. (*See* ECF No. 644-2 at 5–6; ECF No.

---

[8] In so stating, the Court does not mean to suggest that the BOP's level of care has been constitutionally inadequate.

648 at 14 (indicating that Aigbekaen gained 16 pounds in one month in 2024).) Although Aigbekaen himself retains primary responsibility over managing his own diet and exercise, it is clearly also the case that the prison environment has not been conducive toward maintaining his health. In short, Dr. Davidoff concludes that she "do[es] not believe the BOP is capable of providing him with the much-needed mental health treatment and medical care required to adequately treat these conditions. Failure to treat these conditions may result in a permanent worsening of Mr. Aigbekaen's mental illness, cognitive deficits, and physical health." (ECF No. 644-2 at 6.)

Finally, the Court considers evidence of Aigbekaen's rehabilitation and the existence of a viable reentry plan. *See Davis*, 99 F.4th at 658–59 (holding that the district court abused its discretion when it failed to consider evidence of the defendant's "post-conviction rehabilitation and stable reentry plan"). Aigbekaen has completed extensive coursework while incarcerated— Aigbekaen asserts (and the Government does not contest) that "he has logged *thousands* of hours educating himself with classes designed to improve his health [and] prepare him for the workforce and he has spent hundreds of hours apprenticing as a housekeeper and custodian." (ECF No. 644 at 15 (emphasis in original).) However, as will be discussed below in the discussion of the § 3553(a) factors, Aigbekaen has also incurred numerous disciplinary infractions during his imprisonment, so his rehabilitation, when balanced against his disciplinary record, does not carry much weight in the extraordinary-and-compelling analysis. More helpful for Aigbekaen is the fact that he has a strong reentry plan—he has received a "letter of reasonable assurance" from a community service organization indicating that he will receive housing and employment assistance upon release, he has a plan to live with his mother (who plans to help take him to medical appointments) in West Babylon, New York, and he expects to receive over $3,800 per month in

7

disability payments from the Veterans Affairs administration. (ECF No. 644 at 15; ECF No. 644-6.) These considerations all suggest that, despite his difficulties in prison, Aigbekaen has taken some strides toward rehabilitation and—with proper treatment for his mental and physical conditions—may eventually return to being a positive contributor to society. This evidence of his reentry plan provides modest reinforcement of the Court's conclusion that there are extraordinary and compelling reasons for release. *See United States v. Hart*, Crim. No. 94-00423, 2024 WL 3974230, at *8 (E.D. Va. Aug. 28, 2024) (finding extraordinary and compelling reasons for release based in part on a defendant's "strong reentry plan," and "family support").

### B.    *Section 3553(a) Factors*

The Court next turns to the 18 U.S.C. § 3553(a) factors, and concludes that a modest sentence reduction is warranted.

Under 18 U.S.C. § 3553(a), the Court must "impose a sentence sufficient, but not greater than necessary," after considering (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence imposed to, *inter alia*, reflect the seriousness of the offense, provide deterrence, and protect the public, (3) the kinds of sentences available, (4) applicable Sentencing Guidelines, (5) any pertinent policy statement issued by the Sentencing Commission, (6) the need to avoid unwarranted sentencing disparities, and (7) the need to provide restitution to any victims.

Turning to the first factor, the nature and circumstances of the offense were, and remain, "appalling." (ECF No. 262 at 162 (sentencing transcript).) Aigbekaen and his co-defendant, Greene, trafficked L., a then-16-year-old child, "in the most odious way." (*Id.*) He and Greene advertised L.'s sexual services online and arranged for her to have prostitution "dates" with up to five clients per day. (*Id.* at 135.) The Court also found, at sentencing, that Aigbekaen "engaged

8

in sexual relations" with L. himself. (*Id.* at 113–14.) Moreover, the Court found that Aigbekaen was "at a minimum . . . reckless in his disregard of the possibility that [L. was a minor] and that it is probable that he fully knew and appreciated the fact that she was not 18."[9] (*Id.* at 162–63.) Such a heinous crime calls out for a correspondingly substantial punishment to promote respect for the law, deter further criminality, and protect the public.

As for the history and characteristics of the defendant, the Court observed at sentencing that Aigbekaen had an impressive service record in the Navy before embarking on the criminal conduct at issue in this case; however, Aigbekaen's Navy record has already been factored into his sentence, as the Court granted an eight-month downward variance at sentencing to account for his military service. (ECF No. 262 at 169.) Other than the instant offense, Aigbekaen had zero criminal history points. (ECF No. 226 at 7 (Amended Presentence Report[10]).) And, as the Court has already discussed, Aigbekaen has a viable reentry plan. *See United States v. Dawson*, Crim. No. ELH-94-0010, 2024 WL 3455002, at *14 (D. Md. July 17, 2024) ("Courts in this Circuit generally consider a defendant's release plan when evaluating the appropriateness of release under 18 U.S.C. § 3553(a).").[11]

However, the Court must also consider Aigbekaen's post-sentencing conduct while imprisoned. *See United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (stating that the

---

[9] Earlier in the sentencing proceeding, the Court stated that it doubted whether the Government had proven Aigbekaen's knowledge of L.'s minority. (ECF No. 262 at 82–83.) However, the Court and the parties then embarked on an extended colloquy on the issue (*see generally id.* at 83–111), which caused the Court to reevaluate its views on this point.

[10] The Court adopted the Amended Presentence Report without change. (ECF No. 229.)

[11] The Court also observes that Aigbekaen has written a letter in connection with the instant Motion for Compassionate Release taking responsibility for his actions and apologizing to the victim, the Court, and the country. (ECF No. 644-1.) The Court does not ascribe any substantial weight to this letter, given that it comes on the heels of years of Aigbekaen deflecting blame for the crime and repeatedly seeking to overturn his conviction.

"district court must also at least weigh" a compassionate release petitioner's "conduct in the years since their initial sentencing[]"); *see also Pepper v. United States*, 562 U.S. 476, 491–93 (2011); *United States v. Brown*, 78 F.4th 122, 133 (4th Cir. 2023) (*Brown I*). Here, the most significant—and troubling—aspect of his post-sentencing conduct is his extensive disciplinary history.

Aigbekaen·has accumulated nine disciplinary infractions during his time in prison. (*See* ECF No. 657-1 at 1–3.) Some of these—such as his most recent infraction, in March 2024, for being in an unauthorized area—are relatively minor. (*Id.*) Most concerning to the Court is an attempted assault on a correctional officer that occurred in May 2022. (*See generally* ECF No. 657-2.) In this incident, which was captured on video, Aigbekaen refused an officer's direction to return to his housing unit, and when the officer sought to escort him back to the unit, Aigbekaen "balled [his hands]," assumed an "aggressive posture," and took "aggressive steps toward the [o]fficer," before the officer was able to restrain him. (*Id.* at 3.) At the subsequent disciplinary hearing, Aigbekaen denied culpability, insisting that the charge against him was a "complete fabrication," and called as his witness another inmate who professed that he was not present at the scene and "was unsure as·to why he was being called as a witness." (*Id.* at 4.) The charge against Aigbekaen was sustained, and he was sanctioned with a loss of 27 days of good time credit, 14 days of disciplinary segregation, and 180 days of loss of email, phone, and visiting privileges. (*Id.*)

Aigbekaen's disciplinary record weighs against a reduction in sentence. Aigbekaen's record reflects that he has repeatedly refused both to follow rules necessary for prison operation and to accept responsibility for his actions. However, when balanced against the factors weighing in support of a reduction, the Court concludes that his disciplinary record does not entirely preclude him for relief. A petitioner need not have a "spotless" disciplinary record to be entitled to a sentence reduction. *See United States v. Savoy*, Crim. No. JKB-05-00415, 2024 WL 3091125, at

*4 (D. Md. June 21, 2024). Moreover, "[c]ourts in this District have been willing to release inmates with far more serious disciplinary records" than Aigbekaen's. *See Brown II*, 706 F. Supp. 3d at 524 (collecting cases). Aigbekaen's problematic disciplinary history is simply one consideration—albeit a powerful one—in assessing the propriety of a sentence reduction.

Turning to the need for the sentence imposed to, *inter alia*, reflect the seriousness of the crime, provide adequate deterrence, and protect the public, the Court has already explained that the crime of conviction is reprehensible and merits a substantial punishment. That said, the Court finds that the current 180-month sentence is greater than necessary because Aigbekaen's unique combination of mental and physical health conditions have made his term of incarceration more punitive than anticipated by the Court at the time of sentencing. In the compassionate release context, the Court properly considers whether conditions "not contemplated by the original sentencing court" have made the defendant's prison sentence "harsher and more punitive" than anticipated. *Brown I*, 78 F.4th at 132 (citations omitted). Notably, at sentencing, Aigbekaen's counsel did not bring to the Court's attention Aigbekaen's mental health struggles or his prior traumatic brain injury. (*See generally* ECF No. 262.) As a consequence, when the Court sentenced him to 180 months, it did not consider the possibility that incarceration would be more challenging to Aigbekaen than it would be to an average prisoner. Thus, while 180 months may have been the sentence that was sufficient but not greater than necessary based on the information available to the Court at the original sentencing, a slightly lower sentence is justified now. *See Brown I*, 78 F.4th at 132.

As for the applicable guidelines range, the analysis is the same today as it was on the day Aigbekaen was sentenced. The adjusted offense level remains 36 (*see* ECF No. 226 at 5–7 (citing U.S.S.G. §§ 2G1.3(a)(2), 2G1.3(b)(4)(A), 3A1.1(b)(1), 3B1.1(c)), which—combined with a

11

criminal history category of I—yields a guidelines range sentence of 188 to 235 months. *See* U.S.S.G. Ch. 5 Pt. A (Sentencing Table). However, as explained above, the Court determined at sentencing that a downward variance from the guidelines range was appropriate to reflect Aigbekaen's military record, and the Court now finds that a further, modest, variance is warranted to account for his unusually punitive experience in prison.

The existence of factors weighing for, and against, a reduction in Aigbekaen's sentence makes this a difficult case. The Court has considered this matter carefully, and has sought to place the instant Motion in the context of the extensive history of this case.[12] Upon a consideration of the relevant § 3553(a) factors, the Court concludes that a modest, six-month reduction in sentence is appropriate to account for the unusually harsh experience of Aigbekaen's incarceration. The Court declines to accord Aigbekaen the entire 36-month reduction he requests, as additional prison time is warranted for further rehabilitation in light of his disciplinary record and to provide adequate punishment for the crime of conviction. *See United States v. Wright,* Crim. No. ELH-08-381, 2022 WL 2104489, at *18 (D. Md. June 10, 2022) (explaining that a court may "grant[] sentence reductions without immediate release").

## IV.    Conclusion

For the foregoing reasons, it is ORDERED that:

1. The Motion for Compassionate Release (ECF No. 644) is GRANTED IN PART. An Amended Judgment SHALL ISSUE, resentencing Aigbekaen to a term of imprisonment of 174 months, to be followed by 5 years of supervised release.

---

[12] In addition to the factors discussed above, the Court has considered the kinds of sentences available, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims, and finds that they do not have any substantial bearing on the appropriate prison sentence in the circumstances of this case. The Court already considered and discussed the applicable Sentencing Guidelines in its extraordinary-and-compelling analysis.

2. Aigbekaen's *pro se* motions (ECF Nos. 610, 613, 617, 631) are DENIED AS MOOT.

3. The Government's Motion to Seal (ECF No. 647) is DENIED WITHOUT PREJUDICE. Within fourteen days of the date of this Memorandum and Order, the Government SHALL FILE a renewed Motion to Seal, together with an unsealed version of its Response in opposition to the Motion for Compassionate Release (ECF No. 648). The Government SHALL REDACT the unsealed version of the Response as necessary to protect the identity of victims and/or to prevent the release of confidential medical information. Such redactions must be narrowly tailored to those interests.

4. The Government's Motion to Seal (ECF No. 647) SHALL BE UNSEALED.

5. The Government's sealed Response (ECF No. 648) SHALL REMAIN SEALED.

DATED this _8_ day of May, 2025.

BY THE COURT:

James K. Bredar
United States District Judge